United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

CHHAI VA,

             Petitioner,

     v.

SERGIO ALBARRAN, et al.,

             Respondents.

Case No.  26-cv-5002

**ORDER GRANTING *EX PARTE* APPLICATION FOR TEMPORARY RESTRAINING ORDER**

[Re: ECF 3]

Before the Court is Petitioner Chhai Va's *ex parte* application for a temporary restraining order ("TRO"), seeking release from the custody of U.S. Immigration and Customs Enforcement ("ICE").  *See* Applic. for TRO, ECF 3.  The application for TRO was filed shortly after Mr. Va filed a petition for writ of habeas corpus against Respondents Sergio Albarran, Field Office Director of the San Francisco ICE Office; David J. Venturella, Acting ICE Director; Markwayne Mullin, Secretary of the United States Department of Homeland Security ("DHS"); and Todd Blanche, Acting Attorney General of the United States.  *See* Pet., ECF 1.

Mr. Va's application for TRO is GRANTED for the reasons discussed below.

**I.  BACKGROUND**

The petition, application for TRO, and supporting declarations of Mr. Va's counsel establish as follows.  Mr. Va is a 42-year-old national of Cambodia, who has lived in the United States since the age of 13.  He became a lawful permanent resident in 1997.  Mr. Va subsequently was placed in removal proceedings based on a 2003 criminal conviction for which he served eight years in prison.  A final order of removal issued in 2012 designating Cambodia as the country of removal.  ICE tried to remove Mr. Va to Cambodia at that time but could not secure a travel

document for him.  Mr. Va spent nine months in ICE custody and eventually was released on an Order of Supervision ("OSUP") in 2013.

Mr. Va has attended all of his ICE check-ins for the past 13 years.  He has been gainfully employed during that period.  He cares for his 8-year-old autistic son and his mother, who suffers from diabetes, memory loss, confusion, and post-traumatic stress disorder from surviving the Khmer Rouge genocide.  Mr. Va had misdemeanor convictions for driving under the influence in 2015 and driving with a suspended license in 2019.

On May 7, 2026, Mr. Va reported for his usual ICE check-in at 630 Sansome Street in San Francisco, California.  He was told to come back in three weeks.  When he did so on May 27, 2026, he was told to return the following day.  Mr. Va returned as directed on May 28, 2026, at which time he was detained.  The intake coordinator advised Mr. Va that Cambodia had issued a travel document for him.  However, Mr. Va was not given a copy of the travel document and has not been afforded the opportunity to challenge it.  When Mr. Va's counsel requested a copy of the travel document, ICE refused.

Later in the day on May 28, 2026, ICE transported Mr. Va to Stockton, California, then transferred him to a Sacramento holding cell for the night.  On the morning of May 29, 2026, ICE brought Mr. Va back to 630 Sansome Street in San Francisco.  While he was sleeping, ICE left him a document titled "Alien Informal Interview" stating that ICE Officer Carrasco conducted an initial informal interview of Mr. Va on May 28, 2026 in order to afford him an opportunity to respond to the reasons for revocation of his OSUP.  *See* Lee Decl. ISO Pet. Ex. D, ECF 1-1.  Mr. Va asserts that no such interview occurred.

Mr. Va's counsel obtained a copy of a Notice of Revocation of Release ("Notice") dated May 29, 2026 and signed by ICE Officer Carrasco.  *See* Lee Decl. ISO Pet. Ex. C.  The Notice indicates that Mr. Va's release has been revoked pursuant to 8 C.F.R. § 241.13(i) based on changed circumstances, specifically that ICE has obtained a travel document and scheduled his removal to take place no later than August 26, 2026.  *See id*.

Mr. Va is believed to be held at 630 Sansome Street in San Francisco.  He seeks immediate release from ICE custody.

## II.    LEGAL STANDARD

The standard for issuing a temporary restraining order is substantially identical to the standard for issuing a preliminary injunction. *Washington v. Trump*, 847 F.3d 1151, 1159 n.3 (9th Cir. 2017). Thus, a party seeking a temporary restraining order must establish "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008). "[I]f a plaintiff can only show that there are serious questions going to the merits – a lesser showing than likelihood of success on the merits – then a preliminary injunction may still issue if the balance of hardships tips *sharply* in the plaintiff's favor, and the other two *Winter* factors are satisfied." *Friends of the Wild Swan v. Weber*, 767 F.3d 936, 942 (9th Cir. 2014) (internal quotation marks and citations omitted).

An injunction is a matter of equitable discretion and is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A "TRO 'should be restricted to . . . preserving the status quo and preventing irreparable harm just so long as is necessary to hold a [preliminary injunction] hearing, and no longer.'" *E. Bay Sanctuary Covenant v. Trump*, 932 F.3d 742, 779 (9th Cir. 2018) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974)).

## III.    DISCUSSION

### A.    Issuance of TRO Without Notice

As a preliminary matter, the Court finds that the requirements for issuing a TRO without notice are satisfied. *See* Fed. R. Civ. P. 65(b)(1) (setting forth requirements for issuance of a TRO without notice). Counsel for Mr. Va has filed declarations setting forth specific facts showing that immediate and irreparable injury, loss, or damage may result before the adverse party can be heard in opposition; stating that the petition and application for TRO were emailed to counsel for Respondents; and explaining why further notice to the Government should not be required. *See* Lee Decl. ISO Pet.; Lee Decl. ISO Applic. for TRO, ECF 4.

3

**B.**   ***Winter* Factors**

The Court next considers Mr. Va's showing on the *Winter* factors.

**1.**   **Likelihood of Success/Serious Questions Going to the Merits**

The petition asserts four claims for relief:  (1) detention in violation of 8 U.S.C. § 1231(a)(6) and the Fifth Amendment Due Process Clause; (2) re-detention in violation of governing regulations; (3) re-detention in violation of the Fifth Amendment's procedural due process protections; and (4) re-detention in violation of the Fifth Amendment's substantive due process protections.  *See* Pet. ¶¶ 43-64.  Mr. Va seeks immediate release from ICE custody under the conditions of his prior OSUP and an order enjoining Respondents from re-detaining him without either (1) obtaining a determination by a neutral adjudicator that he is a flight risk or danger to the community or (2) obtaining a valid travel document, providing such travel document to him, offering him an opportunity to leave the United States voluntarily and, if he fails to leave the United States voluntarily, demonstrating that Respondents have made concrete arrangements for Mr. Va to be put on a flight to Cambodia.  *See* Pet. Prayer.

The Court finds that Mr. Va has demonstrated a likelihood of success on his due process claims or, at the least, serious questions going to the merits of those claims.  "[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). "Freedom from imprisonment – from government custody, detention, or other forms of physical restraint – lies at the heart of the liberty that Clause protects." *Id*. at 690.

Numerous district courts in this circuit have held that when a noncitizen who is subject to a final order of removal is released under an OSUP, the noncitizen accrues a liberty interest in remaining free from detention and is entitled to a pre-deprivation hearing prior to detention. *See, e.g., Dong v. Warden of the Golden State Annex ICE Det. Facility*, No. 1:26-CV-00458-JLT-EPG-HC, 2026 WL 1328583, at *3 (E.D. Cal. May 13, 2026) (collecting cases); *Mehradad Ghassemi Bakhtiari v. Pamela Bondi*, No. EDCV 26-0663 JGB (KESX), 2026 WL 1428803, at *3 (C.D. Cal. Feb. 17, 2026) (collecting cases); *Vo v. Albarran*, No. 26-cv-01489-BLF, 2026 WL 483056, at *3 (N.D. Cal. Feb. 20, 2026) (collecting cases).

United States District Court
Northern District of California

4

United States District Court
Northern District of California

Some district courts have considered the scope of that liberty interest where, as here, ICE revokes an OSUP pursuant to 8 C.F.R. § 241.13(i).  Under § 241.13(i), ICE may revoke an OSUP (1) if the noncitizen violates a condition of release or (2) if on account of changed circumstances ICE determines that there is a significant likelihood the noncitizen may be removed in the reasonably foreseeable future.  *See* 8 C.F.R. § 241.13(i)(1), (2).  The noncitizen must be notified of the reasons for revocation of release, and ICE must "conduct an initial informal interview promptly after his or her return to Service custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification."  8 C.F.R. § 241.13(i)(3).  The noncitizen "may submit any evidence or information that he or she believes shows there is no significant likelihood he or she be removed in the reasonably foreseeable future, or that he or she has not violated the order of supervision."  *Id*.  "The revocation custody review will include an evaluation of any contested facts relevant to the revocation and a determination whether the facts as determined warrant revocation and further denial of release."  *Id*.  District courts have held that such a noncitizen possesses a Fifth Amendment due process right to "be free from indefinite detention, a liberty interest to an informal hearing prior to revocation of his order of supervision, and a right to an informal interview under ICE's internal procedures."  *See Bakhtiari*, 2026 WL 1428803, at *4.

This Court finds that at this preliminary stage of the proceedings, Mr. Va has demonstrated that he has an accrued liberty interest in remaining free from detention, and that ICE has violated that interest by re-detaining him without conducting a pre-deprivation hearing or, at minimum, the informal interview required under 8 C.F.R. § 241.13(i)(3).  Accordingly, this Court finds that Mr. Va is likely to succeed on his due process claims under the three-factor inquiry set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

The Court does have concerns regarding its jurisdiction to grant relief in this case in light of the final removal order and ICE's representation that it has obtained a travel document and scheduled Mr. Va's removal to Cambodia.  Under 8 U.S.C. § 1252(g), "no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, *or execute removal*

*orders* against any alien[.]" 8 U.S.C. § 1252(g) (emphasis added). However, Mr. Va represents that ICE has refused to provide a copy of the travel document to him or his attorney. Moreover, it is unclear whether ICE has made concrete arrangements to remove Mr. Va to Cambodia. Accordingly, on the current record, the Court finds that there are at least serious questions whether the jurisdiction-stripping provision of § 1252(g) applies.

### 2.    Irreparable Harm

The Court finds that Mr. Va has demonstrated a likelihood of irreparable harm absent issuance of a TRO. The Ninth Circuit has recognized "irreparable harms imposed on anyone subject to immigration detention," including "the economic burdens imposed on detainees and their families as a result of detention." *Hernandez v. Sessions*, 872 F.3d 976, 995 (9th Cir. 2017). Mr. Va is the breadwinner for his family and he cares for his autistic son and infirm mother. As a consequence, those risks are present here.

### 3.    Balance of Equities and Public Interest

The last two factors, the balance of the equities and the public interest, are considered together where, as here, the government is the opposing party. *See Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) ("When the government is a party, these last two factors merge."). "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering[.]" *Jorge M. F. v. Wilkinson*, No. 21-CV-01434-JST, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021) (internal quotation marks, citations, and alterations omitted); *see also Preminger v. Principi*, 422 F.3d 815, 826 (9th Cir. 2005) ("Generally, public interest concerns are implicated when a constitutional right has been violated, because all citizens have a stake in upholding the Constitution.").

Without the requested injunctive relief, Mr. Va faces deprivation of his liberty. The comparative harm potentially imposed on Respondents is minimal – a short delay in detaining and removing Mr. Va in the event he ultimately fails to prevail on his habeas claims. Moreover, a party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir.

United States District Court
Northern District of California

6

1983).  Accordingly, the Court finds that the balance of equities and public interest tip sharply in favor of Mr. Va.

### 4.      Conclusion that Issuance of TRO is Warranted

Having considered the four *Winter* factors, the Court concludes that it is appropriate to issue a TRO to require Mr. Va's release and return him to the status quo.  *See E. Bay Sanctuary Covenant*, 932 F.3d at 779.  The status quo refers to "the last uncontested status which preceded the pending controversy."  *Doe v. Noem*, 778 F. Supp. 3d 1151, 1166 (W.D. Wash. 2025) (quoting *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1210 (9th Cir. 2000)).  That is the moment prior to Mr. Va's detention.  Accordingly, the application for TRO is GRANTED as set forth below.

### C.      Security

"The court may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Fed. R. Civ. P. 65(c).  The Ninth Circuit has "recognized that Rule 65(c) invests the district court with discretion as to the amount of security required, if any."  *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003) (internal quotation marks and citation omitted).  "The district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct."  *Id*.  Because the Court perceives no prejudice to Respondents resulting from the TRO, the Court finds it appropriate to issue the TRO without requiring security.

## IV.   ORDER

(1)      Mr. Va's application for TRO is GRANTED to preserve the status quo pending further briefing and a hearing on this matter.

(2)      Respondents are ORDERED to release Mr. Va immediately from Respondents' custody and are ENJOINED from re-detaining Mr. Va while this TRO is in effect. Respondents are ENJOINED from removing Mr. Va from this judicial district, and, if they have already done so, are ORDERED to return him to this judicial district.

United States District Court
Northern District of California

7

(3)   Respondents are ENJOINED from removing Mr. Va from the United States while this TRO is in effect.

(4)   Respondents are ORDERED TO SHOW CAUSE at an in-person hearing in the courtroom of the assigned Judge, or as otherwise ordered by that Judge, at 9:00 a.m. on June 12, 2026, why a preliminary injunction should not issue.  Respondents SHALL file a response to Mr. Va's motion by 12:00 p.m. on June 5, 2026.  Any reply SHALL be filed by 12:00 p.m. on June 9, 2026.  The assigned Judge may modify this schedule.

(5)   Mr. Va SHALL serve on Respondents the petition, summons, and this order by 12:00 p.m. on May 31, 2026.

(6)   Respondents SHALL file a status report regarding their compliance with this order by 12:00 p.m. on June 1, 2026.

(7)   This order shall remain in effect until 4:00 p.m. on June 13, 2026.

Dated:  May 30, 2026 at 4:00 p.m.

_____
BETH LABSON FREEMAN
United States District Judge

United States District Court
Northern District of California

8